IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JAMES HOWARD HUDDLESTON, III,    :

    **Plaintiff,**    :

vs.    :    CIVIL ACTION 06-00475-CG-B

JIMMY JOHNSON, *et al.*,    :

    **Defendants.**    :

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the Motion for Summary Judgment of Defendants James (Jimmy) Johnson, James Boyington,[1] Huey Mack, Jr., Collins Wynn, Calvin Means, Ray Farmer, Sergeant Bradley, and Sergeant Tyson Taylor, (Docs. 22, 23, 24), and Plaintiff's Opposition thereto (Doc. 51). After consideration of these pleadings, and for the reasons set out below, it is recommended that the Motion for Summary Judgment of Defendants Johnson, Boyington, Mack, Wynn, Means, Farmer, Bradley, and Taylor be granted and that Plaintiff's

---

[1] A Suggestion of Death was filed by Defendants on August 27, 2008, notifying this Court of the death of Defendant James Boyington. (Doc. 58). Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Defendant Boyington is due to be dismissed from this action.

action against these Defendants be dismissed without prejudice as
Plaintiff has failed to exhaust an available administrative remedy.

## I.  SUMMARY OF FACTUAL ALLEGATIONS

From its review of the record, the Court summarizes below the
parties' allegations that are material to the issues addressed in
this Report and Recommendation.  Huddleston, a state inmate
currently incarcerated at Draper Correctional Facility,[2] has
alleged that during his incarceration at the Baldwin County
Corrections Center, his constitutional rights were violated on
various occasions between March 2004 and September 2005, when he
was placed on a "rail," also known as a D-Ring restraint, for
varying periods of time.  (Doc. 4 at 4-6, 8-9).  Huddleston claims
that while restrained to the rail, he would at times be sprayed
with pepper gas, or denied bathroom breaks, and on one occasion,
was caused to urinate on himself.  (Id. at 4).  Huddleston also
contends that while incarcerated at the Baldwin County Corrections
Center, he was from time to time confined in a restraint chair with

---

[2]As best the Court can discern, Plaintiff was housed at the
Baldwin County Correctional Center as a pretrial detainee.
Defendants claim that Plaintiff was incarcerated in Baldwin
County on charges of First Degree Assault and Second Degree
Robbery and that he was wanted by another jurisdiction on another
charge of Third Degree Robbery.  (Doc. 23 at 3).  Plaintiff's
inmate file from the Baldwin County Corrections Center also
reflects arrest warrants against Plaintiff for charges of First
Degree Robbery and Second Degree Assault.  (Doc. 23, Ex. A, Pt. 3
at 8 - 10).  Plaintiff alleges that  he was convicted of Second
and Third Degree Robbery.  According to the Alabama Department of
Corrections website, Plaintiff is currently incarcerated at
Draper Correctional Facility.  (Doc. 4 at 6).

shoulder, wrist, and ankle straps. (Doc. 20, Attachment 2, Complaint at 2). Additionally, Huddleston alleges that he was forced to lie face down in toilet water on occasion. (Id. at 3). Plaintiff claims that as a result of these incidents, he suffered shoulder and knee injuries and other pain and suffering. (Doc. 4 at 9; Doc. 20, Attachment 2 at 2). Huddleston is seeking compensatory and punitive damages, as well as court costs and attorney's fees.[3] (Doc. 4 at 7; Doc. 20, Attachment 2 at 6).

Defendants Johnson, Boyington, Wynn, Means, Farmer, Bradley, Mack, and Taylor have denied Huddleston's allegations and asserted the defenses of absolute, qualified, and Eleventh Amendment immunity, as well as the failure of Plaintiff to comply with the mandatory requirements of the Prison Litigation Reform Act. (Docs. 22 and 23).

## II.  **PROCEDURAL ASPECTS OF THE CASE**

In Huddleston's § 1983 Complaint filed on September 27, 2006, he named as Defendants James (Jimmy) Johnson, Raymond Farmer, Calvin Means, and Sergeant Taylor.[4] (Doc. 4). On February 14,

---

[3]Plaintiff is also seeking  attorney's fees and court costs in this consolidated action.  (Doc. 20).

[4]Huddleston originally filed this action on August 16, 2006, (Doc. 1), but, because he used an outdated complaint form, on September 12, 2006, this Court ordered him to file his Complaint on the Court's current form. (Doc. 3).  Subsequently, Plaintiff filed his new Complaint utilizing the proper form on September 27, 2006. (Doc. 4). Per the Court's Order dated September 12, 2006, Plaintiff's new Complaint supersedes his original Complaint.  In Huddleston's original complaint (Doc. 1), he named

2007, Plaintiff, through legal counsel, filed a nearly identical action in the Baldwin County Circuit Court, claiming that Defendants, James Johnson, James Boyington, Huey Mack, Jr., Collins Wynn, and other fictitious parties had used excessive force and subjected him to cruel and unusual punishment with regard to their use of the D-ring and restraint chair in the Baldwin County Corrections Center. (Doc. 20, Attachment 2). Defendants caused the state court action to be removed to this Court. It was docketed as Civil Action Number 07-00200-KD-C. At the request of Defendants, this Court, on April 25, 2007, consolidated Civil Action Number 07-00200-KD-C with the instant action, Civil Action Number 06-00475-CG-B. (Doc. 20).

On May 11, 2007, Defendants Johnson, Boyington, Wynn, Means, Mack, Farmer, Bradley, and Taylor filed their Answer and Special Report. Defendants denied the allegations contained in Huddleston's consolidated Complaints, and asserted the various defenses discussed above[5]. (Docs. 22, 23, 24). The Court

---

Sergeant Bradley as one of the Defendants. Although Huddleston did not name Bradley in his new Complaint, Bradley filed an Answer to the new Complaint. (Doc. 22).

[5]Defendants have provided this Court with Plaintiff's inmate file which reflects extensive disruptive and disturbing behavior by Plaintiff during his stay at the Baldwin County Corrections Center. (Doc. 23, Ex. A, Pts. 1-4). Plaintiff exhibited racist and white supremacist attitudes and was "one of the most violent inmates [some of the officers] ha[d] encountered." (Doc. 23, Ex. B at 4). According to Defendants, "Plaintiff was so violent and disruptive that some sort of force was needed to control him on practically a daily basis." (Id. at 4). In their Special

converted Defendants' Special Report and Answer to a Motion for Summary Judgment on February 20, 2008. (Doc. 42). Plaintiff filed a Response to Defendants' Motion for Summary Judgment on March 24, 2008. (Doc. 51). Defendants filed a reply brief on April 14, 2008. (Doc. 52). Defendants' Motion for Summary Judgment and Huddleston's response thereto are now before the Court.

---

Report, Defendants provided the Court a brief listing of some of Plaintiff's actions while incarcerated at the Baldwin County Corrections Center, stating that as of July 26, 2005, Plaintiff had:

> "(a) threatened to kill an officer on one (1) occasion;
>
> (b) flooded his cell on at least four (4) occasions;
>
> (c) created a riot on one (1) occasion;
>
> (d) threw urine and saved up urine to throw on others;
>
> (e) had at least six (6) disciplinaries for disrespecting corrections officers;
>
> (f) refused to lock down in his cell at least two (2) times;
>
> (g) damaged county property;
>
> (h) kicked and beat on his cell door at least four (4) times;
>
> (i) fought with other inmates eight (8) times; and
>
> (j) was caught in possession of a handcuff key."

(Doc. 23 at 8).

5

### III. <u>SUMMARY JUDGMENT STANDARD</u>

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The <u>Federal Rules of Civil Procedure</u> grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting <u>Fed. R. Civ. P.</u> 56(c)).

The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. <u>Barfield v. Brierton</u>, 883 F.2d 923, 934 (11th Cir. 1989).

However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

<u>Fed. R. Civ. P.</u> 56(e); <u>see also</u> <u>Celotex Corp.</u>, 477 U.S. at 325-27.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a

verdict for that party. . . .   If the evidence is merely colorable,

. . . or is not significantly probative, . . . summary judgment may

be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50

(1986) (internal citations omitted).   "Summary judgment is mandated

where a party 'fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial.'" Custom

Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th

Cir. 2007) (citations omitted).

Based upon a review of the parties' submissions, the

undersigned finds that Defendants have met their evidentiary burden

and demonstrated the absence of a genuine issue of material fact

with respect to Huddleston's failure to exhaust administrative

remedies. Thus, the burden shifts to Huddleston to establish, with

appropriate evidence beyond the pleadings, that a genuine issue

material to his case exists. Clark v. Coats and Clark, Inc., 929

F.2d 604, 608 (11th Cir. 1991); Celotex, 477 U.S. at 324; Fed. R.

Civ. P. 56 (e)(2) ("When a motion for summary judgment is properly

made and supported, an opposing party may not rely merely on

allegations or denials in its own pleading; rather its response

must ... set out specific facts showing a genuine issue for

trial.").   A genuine issue of material fact exists when the

nonmoving party produces evidence that would allow a reasonable

fact-finder to return a verdict in its favor. Greenberg v.

BellSouth Telecomm., Inc., 498 F.3d 1258, 1263 (11th Cir. 2007).

As the Middle District of Alabama recently noted in a similar case, "[t]o survive Defendants' properly supported motion for summary judgment, Plaintiff is required to produce 'sufficient [favorable] evidence' establishing proper exhaustion of administrative remedies." Johnson v. McCarty, Civil Action No. 07-52, 2008 WL 5429837, *2 (M.D. Ala. Dec. 31, 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. Anderson v. Liberty Lobby, 477 U.S. 242, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986)." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

"Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment." Johnson v. McCarty, 2008 WL 5429837 at *2 (citing Waddell v. Valley Forge Dental Associates, Inc., 276 F.3d 1275, 1279 (11th Cir. 2001)); Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations...");

<u>Fullman v. Graddick</u>, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment..."). In this action, Huddleston has failed to show that a material fact exists as to whether he exhausted his administrative remedies as required under the PLRA.

## IV. <u>DISCUSSION</u>

Huddleston complains that his Eighth Amendment right to be free from cruel and unusual punishment was violated by Defendants on various occasions between March 2004 and September 2005, when, while incarcerated at the Baldwin County Corrections Center, he was at various times allegedly handcuffed to a restraining ring, confined to a restraint chair, and forced to lie face down in overflowing toilet water. (Doc. 4 at 4; Doc. 20, Attachment 2 at 2-3). Huddleston claims that Defendants would occasionally confine him to a D-ring on the wall, with his hands cuffed behind his back, for periods of time ranging from four to twenty-four hours. (Doc. 20, Attachment 2 at 2). Huddleston also alleges that Defendants would, at various times, confine him to a restraint chair and that he was, at times, denied food, drink, and the use of restroom facilities while confined to these restraint devices. (<u>Id.</u>) According to Huddleston, he was confined to these devices for improper reasons and was forced to endure substantial pain and suffering for no just cause. (<u>Id.</u>)

9

As noted supra, Defendants assert that this action is due to be dismissed for a number of reasons. One of the grounds asserted by Defendants is that Huddleston has failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Defendants contend specifically that Huddleston failed to exhaust the administrative remedies available to him at the Baldwin County Corrections Center through the facility's inmate grievance procedure. (Doc. 23 at 13-14).

"The Prison Litigation Reform Act of 1995 (PLRA) ... requires prisoners to exhaust prison grievance procedures before filing suit." Jones v. Bock, 549 U.S. 199 (2007). Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

"Congress has provided in §1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S.

10

516, 532 (2002).  "Exhaustion is a precondition to litigation in federal courts, and courts do not have the discretion to waive the §1997e(a) requirement." <u>Mason v. FNU Bridger</u>, 261 Fed. Appx. 225, 228 (11th Cir. 2008) (citing <u>Booth</u>, 532 U.S. at 741; and <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1325-26 (11th Cir. 1998)).  "There is no question that exhaustion is mandatory under the PLRA." <u>Jones</u>, 549 U.S. at 199-200 (citing <u>Porter</u>, 534 U.S. at 524).

Furthermore, it has been held that "the PLRA exhaustion requirement requires <u>proper exhaustion</u>." <u>Woodford v. Ngo</u>, 548 U.S. 81, 92 (2006) (emphasis added).  In <u>Woodford</u>, the Supreme Court explained that to properly exhaust "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." <u>Id.</u> at 88.  The Court went on to explain that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings....  Construing §1997e(a) to require proper exhaustion ... fits with the general scheme of the PLRA, whereas [a contrary] interpretation would turn that provision into a largely useless appendage." <u>Id.</u> at 90-93.

As noted by the Court in <u>Johnson v. McCarty</u>, 2008 WL 5429837 (M.D. Ala. Dec. 21, 2008), "[t]his interpretation of the PLRA's exhaustion requirement 'carries a sanction' for noncompliance and

avoids 'mak[ing] the PLRA exhaustion scheme wholly ineffective.'" <u>Johnson</u>, 2008 WL 5429837 at *4 (quoting <u>Woodford</u>, 548 U.S. at 95). Thus, a prisoner cannot simply bypass available administrative remedies and then "proceed directly to federal court," either by "failing to properly exhaust available administrative remedies" or by waiting until those "remedies are no longer available." <u>Id.</u> "[A]llowing federal review under these circumstances would impose 'no significant sanction' on the prisoner," <u>id.</u>, and the Supreme Court has noted that "the PLRA did not create such a toothless scheme." <u>Woodford</u>, 548 U.S. at 95. "Further, the PLRA's exhaustion requirement contains no futility exception where there is an available inmate grievance procedure." <u>Johnson</u>, 2008 WL 5429837 at *4 (citing <u>Booth</u>, 532 U.S. at 741 n.6) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); and <u>Cox v. Mayer</u>, 332 F.3d 422, 424-428 (6th Cir. 2003) (holding that the exhaustion requirement applies to a former prisoner who filed his complaint without exhausting his administrative remedies and who had since been released from custody).

In support of their exhaustion argument, Defendants have put forth evidence showing that at all times relevant to this litigation, the Baldwin County Corrections Center maintained an inmate grievance procedure and that Huddleston was aware of the procedure. (Doc. 23, Exs. A, B, C, G; Doc. 24, Exs. D ,F). This procedure is available to all Baldwin County Corrections Center

inmates, including Plaintiff, during his incarceration at the
Center. (<u>Id.</u>)  According to Defendants, copies of all completed
grievances and request forms would have been placed in Plaintiff's
inmate file.  (Doc. 23, Ex. B at 1-2).  Defendants assert that a
search of Huddleston's inmate file at the Center reveals that
Huddleston never filed a grievance regarding his complaints of
confinement to the D-ring and the restraint chair which are the
central issues of his Complaint.  (Doc. 23).  A review of the
record also indicates that Huddleston did not file a grievance
regarding his allegation of being forced to lie face down in toilet
water.[6]

In his opposition to Defendants' Motion for Summary Judgment,
Plaintiff does not deny that he is required to exhaust
administrative remedies, nor does he deny that an inmate grievance
procedure is available at the Baldwin County Corrections Center.
Rather, Huddleston simply maintains that he has "exhausted all

_____

[6]The Court observes notes that Huddleston's inmate file does
contain an inmate grievance form filed by Plaintiff wherein he
complains of being forced to "face down on the floor." (Doc. 23,
Ex. A, Pt. 2 at 14).  In the grievance form, Huddleston also
complains about an occurrence in the jail's dayroom.  The
grievance form does not reference or make any mention of water,
let alone any "toilet water."  This complaint, therefore, clearly
concerns a different incident than that complained of by
Huddleston in his cause of action.  In this action, Huddleston
alleges that he was forced to lie face down in overflowing toilet
water, a distinctly different claim from that asserted in the
inmate grievance.  Nothing in Huddleston's inmate file indicates
that he ever complained of being forced to lie face down in
overflowing toilet water.  Based upon the record, it appears that
the instant action contains Huddleston's first complaint of being
forced to lie face down in overflowing toilet water.

administrative remedies available to him at the Baldwin County
Corrections Center." (Doc. 51 at 4).

The record in this action establishes that the Baldwin County
Corrections Center provides a grievance procedure for inmate
complaints. It is undisputed that Huddleston was informed of this
procedure, and that he did, in fact, file grievances during his
incarceration at the Baldwin County Corrections Center. However,
Defendants maintain that Huddleston filed no grievances concerning
the allegations made the subject of the instant action.[7] (Doc.
23). Huddleston relies solely on his own conclusory allegations in
claiming that he did exhaust his administrative remedies, and in
alleging that while in the Baldwin County Corrections Center, he
requested grievance forms, which he allegedly received on some
occasions but not on others. (Doc. 4 at 4; Doc. 51).

District courts may properly consider matters outside the
pleadings and resolve factual issues related to whether a plaintiff

---

[7]Defendants' evidentiary material shows that Huddleston was
clearly aware of the grievance procedure and did in fact submit
grievances, involving unrelated complaints, during his stay at
the Baldwin County Corrections Center. Those grievances were as
follows: a request for a stay in disciplinary segregation to end
on July 2 instead of July 4; a request for his opened food items
to be brought to him while he was in disciplinary segregation; a
complaint that he was forced to lie face down on the floor and
also that while in the day room, Corp. Cox threatened to beat
him; and complaints of being on three day observation and lock
down for too long. (Doc. 23, Ex. A, Pt. 2 at 13, 14, 19 and Pt.
3 at 1, 3-4). Also included in Huddleston's inmate file is a
handwritten note from Huddleston to the Sheriff, with Plaintiff
stating that he needed to speak with "someone working in internal
affairs" concerning a problem in the jail. (Doc. 23, Ex. A, Pt.
2 at 30).

exhausted his administrative remedies as long as the factual disputes do not decide the merits. <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374, 1376 (11th Cir. 2008). Thus, this Court may properly resolve the issue of whether Huddleston failed to exhaust his administrative remedies. Based upon a review of the record, including the parties' submissions, the undersigned finds that the evidence reflects that Plaintiff failed to properly exhaust his available administrative remedies at the Baldwin County Corrections Center. <u>See</u> <u>Allen v. Vaugner</u>, Civil Action No. 07-90, 2009 WL 857000 (M.D. Ala. Mar. 26, 2009) (dismissing plaintiff's complaint for failing to exhaust administrative remedies and observing that the plaintiff's conclusory self-serving statements claiming that he did file grievances regarding the subject allegations were not sufficient to create an issue of material fact when defendants offered the plaintiff's inmate file which reflected that the plaintiff had not filed a grievance regarding the allegations made the subject of the complaint); <u>Moon v. Rayapati</u>, Civil Action No. 06-384, 2008 WL 4493298, *7 (M.D. Ala. Sept. 29, 2008) (dismissing plaintiff's claims for failure to exhaust administrative remedies and explaining that "[plaintiff's] subjective belief that resort to administrative remedies would have been futile and/or ineffectual is not relevant."). As noted above, exhaustion of available remedies applies to all prisoners in any facility, is mandatory, and may not be waived by the court. <u>See</u> <u>Alexander</u>, 159 F.3d at 1324-26; <u>see</u> <u>also</u> <u>Porter</u>, 534 U.S. 516. Furthermore, this Court

15

may not consider the adequacy or futility of administrative
remedies but only the availability of such. Higginbottom v.
Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (citing Alexander, 159
F.3d at 1323).

     The undisputed evidence in this action reflects that
Huddleston was familiar with the inmate grievance procedure at the
Baldwin County Corrections Center and that he had sought
administrative relief on various issues, other than those that are
the subject of this action, during his incarceration at the
facility. Accordingly, following a careful review of the
pleadings, documents, and records filed herein, the Court finds
that Huddleston has failed to make a colorable showing that he
properly exhausted the administrative remedies available to him at
the Baldwin County Corrections Center or demonstrated that he was
denied access to those administrative procedures during his
incarceration at the facility. Other than his self-serving,
conclusory allegations, there is no record of or documentation that
Huddleston made any complaints against Defendants about the matters
raised in the instant action. Huddleston alleges in a conclusory
fashion that he has exhausted his administrative remedies, yet, he
has offered no probative facts or evidence to support his claim
that he took advantage of and/or properly exhausted the
administrative remedies available to him at the Baldwin County
Corrections Center with respect to the allegations made the basis
of his complaint. Huddleston's reliance solely on his own self-

16

serving statements, without any supporting evidence, is simply insufficient. <u>See</u> <u>Kozuh v. Nichols</u>, 185 Fed. Appx. 874, 876 (11th Cir. 2006) (rejecting plaintiff's claim that he was "thwarted" when officials refused to respond to his grievances, noting that although plaintiff had made multiple complaints, the record was devoid of any evidence that plaintiff had properly raised his issues in informal grievances, formal grievances and appeals to the proper staff).

Based on the foregoing, this Court concludes that Huddleston's claims are due to be dismissed with prejudice as he has failed to exhaust an available administrative remedy which is a precondition to proceeding in this Court on his claims.

## V. <u>CONCLUSION</u>

If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against the nonmovant. <u>Celotex Corp.</u>, 477 U.S. at 322. "No material issues can be in dispute where the plaintiff's evidence fails to establish a constitutional violation." <u>Bennett v. Parker</u>, 898 F.2d 1530, 1534 (11th Cir. 1990).

Therefore, based on the foregoing, it is recommended that the Motion for Summary Judgment of Defendants Johnson, Boyington, Wynn, Means, Mack, Farmer, Bradley, and Taylor (Docs. 22, 23, 24) be

granted, that Plaintiff's action be dismissed without prejudice, and that judgment be entered in favor of Defendants on all claims.

**DONE** this the **24th** day of **June, 2009**.


_____/s/ SONJA F. BIVINS_____
**UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.  <u>Objection</u>.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(c); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988); <u>Nettles v. Wainwright</u>, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  <u>Transcript (applicable where proceedings tape recorded)</u>. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.